**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 13-cr-40060-DDC** |
| **ALBERT DEWAYNE BANKS (01),** **PATRICIA BRIDGET FOY (04),** **JOHNNY LEE IVORY, III (05),** **MARTYE MADABUTI MADKINS, III (06),** **OTIS DEAN PONDS (08),** **ANTHONY CARLYLE THOMPSON (10),** **KAREN ANTOINETTE JOHNSON (12),** **and** **WALTER BERNARD TAYLOR (14),** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

The procedural background of this case is familiar to the parties, so the Court describes it

briefly. Three motions to suppress evidence obtained by search warrants were pending when the

Court conducted a suppression hearing on August 21, 2014 (Docs. 338, 344, 357). At that same

hearing, the Court preliminarily granted defendants' motions to suppress wiretap evidence,

concluding that Kansas law required it to suppress any phone call intercepted outside Kansas'

Eighth Judicial District (Doc. 517). When the Court issued this ruling, the parties had not

presented any evidence that would enable the Court to determine which particular calls its ruling

excluded, so it continued the case to permit the government to the obtain cell-site location data

(Doc. 496). Recognizing that the resolution of the wiretap issue might affect which evidence it

could consider when resolving the challenges to the underlying search warrants, the Court

1

deferred its decision on the motions to suppress search warrants until it could determine which, if any, wiretap evidence survived its ruling.

Defendants have since filed two additional rounds of motions.  The first argued that the government's cell-site evidence failed to establish the phones' locations within Kansas' Eighth Judicial District.  The Court agreed with defendants' argument except as it applied to calls that pinged one of the six cell towers located in and around Junction City, Kansas.  These calls, the Court concluded, likely originated or were recieved within the Eighth Judicial District and thus survived the Court's suppression ruling.  *See* Doc. 580.

In response, defendants filed a second round of suppression motions, and now they are before the Court.  These motions are:

- Anthony Thompson's motion to suppress evidence obtained from search of residence and subsequent wiretap order (Docs. 357, 590);

- Johnny Ivory's first and second motions to suppress (Docs. 338, 585);

- Albert Banks' motion to suppress evidence derived from defective search warrant and subsequent wiretap order (Docs. 344, 586);

- Otis Ponds' motion to suppress extraterritorial calls, derivative evidence, and improper disclosure of call contents (Doc. 584);

- Patricia Foy's motion to suppress (Doc. 591).

These motions include defendants' original motions to suppress search warrants (Docs. 338, 344, 357), motions asking the Court to exclude evidence they characterize as "derivative" of suppressed phone calls (Docs. 585, 586, 590), and motions asserting miscellaneous suppression arguments (Docs. 584, 591).  Other defendants have filed motions seeking to join the suppression motions of their codefendants (Docs. 592, 593, 594, 595, 596), which the Court already has granted (Doc. 622).  The government has filed a consolidated response to the

motions to suppress (Doc. 597).  In the sections that follow, the Court develops a legal framework for evaluating defendants' motions and then rules each of them.

## I.    Common Issues

Defendants' motions present many similar issues.  In this section, the Court discusses the governing legal standard for each of these recurring issues.

### A.    Standard for Reviewing Probable Cause

"Probable cause 'requires only a probability or substantial chance of criminal activity,' rather than 'an actual showing of such activity.'"  *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009) (quoting *New York v. P.J. Video, Inc.*, 475 U.S. 868, 877-78 (1986)).  When presented with an application for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  "When a court is required to determine the sufficiency of an affidavit previously offered in support of a request for a search warrant, it should view the affidavit in a commonsense, nontechnical manner, with deference to be given in marginal cases to the prior determination of probable cause by the issuing authority."  *United States v. Barrera*, 843 F.2d 1576, 1581 (10th Cir. 1988).  In so doing, a court must rely "'solely on the facts and circumstances presented in the affidavit.'"  *Id.* (quoting *United States v. Rios*, 611 F.2d 1335, 1347 (10th Cir. 1979)).  A court should uphold the issuing magistrate's determination so long as the magistrate had a "substantial basis" to find that the affidavit in support of the search warrant established probable cause.  *United States v. Nolan,* 199 F.3d 1180, 1182 (10th Cir. 1999) (citing *Gates*, 462 U.S. at 236).

### B.    Law Governing Derivative Evidence

Both the federal wiretap statute, commonly called "Title III," and Kansas' wiretap statute, which largely tracks its federal counterpart, require the Court to suppress unlawfully intercepted wire and oral communications and any "evidence derived therefrom."  18 U.S.C. § 2515; K.S.A. § 22-2517.  The motions filed by Mr. Banks, Mr. Ivory, and Mr. Thompson ask the Court to find that certain search warrants "derived from" suppressed phone calls because the warrant applications relied, at least in part, on suppressed wiretap evidence to establish probable cause.  Mr. Thompson's motion also requires the Court to conduct this analysis for a wiretap order that agents obtained after he changed phone numbers.

To apply the "evidence derived therefrom" component of this rule, the analogous and better-developed Fourth Amendment case guides the Court's analysis.[1]  This line of cases instructs the Court, first, that "in a derivative evidence claim, the defendant must make a threshold showing that the challenged evidence is tainted" by unconstitutional conduct.  *United States v. DeLuca*, 269 F.3d 1128, 1135 (10th Cir. 2001) (citing *Alderman v. United States*, 394 U.S. 165, 183 (1969)).  Next, the defendant must establish a "factual nexus" between the primary violation and the derivative evidence.  *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000).  This test demands more than just a showing that the derivative evidence would

---

[1]The Court relies on this aspect of the Fourth Amendment's exclusionary rule for two reasons. First, the "fruit of the poisonous tree" doctrine—first articulated in S*ilverthorne Lumber Company v. United States*, 251 U.S. 385 (1920) and developed more fully in *Wong Sun v. United States*, 371 U.S. 471 (1963)—preceded Title III's enactment.  Congressional reports about Title III reflect Congress' intent to incorporate then-existing search and seizure law into the statute's suppression remedy.  *See* S. Rep. No. 90-1097 (1968) (indicating intent not to "press the scope of the suppression role beyond present search and seizure law").  Second, both federal Title III and the Kansas equivalent include a provision requiring suppression of communications that are intercepted without complying with those acts.  These provisions codify the principles of the "fruit of the poisonous" tree doctrine by requiring courts to suppress improperly intercepted communications and evidence "derived therefrom."  *See* 18 U.S.C. § 2515; K.S.A. § 22-2517.

not have come to light "but for" the primary violation. *Id.* (citing *Wong Sun*, 371 U.S. at 488). Instead, "the ultimate 'fruit of the poisonous tree' inquiry asks whether the challenged evidence has been come at by exploitation of the primary violation or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 1131 n.1 (citing *Wong Sun*, 371 U.S. at 488).

In this context, the Court must invalidate the warrant "if [the suppressed] information was critical to establishing [the existence of] probable cause." *United States v. Sims*, 428 F.3d 945, 954 (10th Cir. 2005). "If, however, the affidavit contained sufficient accurate or untainted evidence, the warrant is nevertheless valid." *Id.* To resolve defendants' motions, the Court will determine, first, what portions of the affidavit derive from suppressed evidence. Next, it will construct a reconstituted affidavit consisting only of the evidence untainted by the wiretap violation. Last, the Court will consider whether probable cause supported a search of targeted residences based solely on the information in the reconstituted affidavits.

### C. Whether the Good-Faith Exception Applies to Evidence Derived From Wiretaps

In *United States v. Leon*, the Supreme Court held that the Fourth Amendment's exclusionary rule does not apply when an officer conducts a search "in objectively reasonable reliance on a subsequently invalidated search warrant." 468 U.S. 897, 922 (1984). The Court reasoned that the exclusionary rule seeks to deter police misconduct rather than judicial mistakes, and so courts should invoke the rule only in circumstances where it serve accomplish that goal. *Id.* at 918-21.

It its response brief, the government asserts repeatedly that the good-faith exception rescues the warrants even if their reconstituted affidavits fail to establish probable cause. If this argument is correct, the Court should proceed directly to the good-faith issue without conducting

a more detailed analysis of the warrants.  *See United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000) (holding that when "reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question").  The exception almost certainly applies because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling.

The Tenth Circuit has not decided whether the good-faith exception should apply to Title III.  *See United States v. Arrington*, No. No. 99-1565, 2000 WL 775576, at *6 (10th Cir. 2000) (recognizing that "the applicability of *Leon* to the Title III context is unsettled in this Circuit") (citing *United States v. Castillo-Garcia*, 117 F.3d 1179, 1196 (10th Cir. 1997), *overruled on other grounds by United States v. Ramirez-Encarnacion*, 291 F.3d 1219 (10th Cir. 2002)).  Other circuits have split over this issue.  *See United States v. Rice*, 478 F.3d 704, 712-14 (6th Cir. 2007) (good-faith exception does not apply to Title III); *but compare United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994) (good-faith exception applies to Title III); *United States v. Malekzadeh*, 855 F.2d 1492, 1497 (11th Cir. 1988) (same).  After carefully examining theses rulings, the Court concludes that the Sixth Circuit's view of the issue is the more persuasive one.  The Court thus concludes that the good-faith exception should not apply to wiretaps for the reasons discussed in the next four paragraphs.

*First*, defendants' motions to suppress wiretap evidence did not rely on the Fourth Amendment's exclusionary rule.  Unlike the Fourth Amendment's judicially created exclusionary rule, the "law governing electronic surveillance via wiretap is codified in a comprehensive statutory scheme providing explicit requirements, procedures, and protections."  *Rice*, 478 F.3d at 712.  Instead, defendants sought suppression under the statutory suppression

remedy contained both in Title III and in Kansas' wiretap statute. *See* K.S.A. § 22-2517 (requiring a court to suppress contents of intercepted commutations when authorization or interception does not comply with the statutory requirements); 18 U.S.C. § 2515 (same). Neither statutory suppression remedy explicitly contains a good-faith exception, *see Rice*, 478 F.3d at 712 ("The statute is clear on its face and does not provide for any exception."), and the Court must construe Title III's provisions strictly. *United States v. McNulty*, 729 F.2d 1243, 1264 (10th Cir. 1983) (observing that the "mandate to strictly construe judicial wiretap authorizations is bottomed on the fact that '[f]ew threats to liberty exist which are greater than that posed by the use of eavesdropping [devices]'" (quoting *Berger v. New York*, 388 U.S. 41, 63 (1967))). The good-faith exception "is the product of judicial balancing of the social costs and benefits of the exclusionary rule." *Rice*, 478 F.3d at 713. Because the "judicial branch created the exclusionary rule," "modification of that rule falls to the province of the judiciary." *Id.* But Title III represents a separate balancing of factors. "[U]nder Title III, Congress has already balanced the social costs and benefits and has provided that suppression is the sole remedy for violations of the statute." *Id.*

Second, Congress was mindful of the idea that good faith should insulate some—but not all—violations of the act. Specifically, the act provides that "[a] good faith reliance on . . . a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization . . . is a complete defense against any civil or criminal action" for unlawful eavesdropping. 18 U.S.C. § 2520(d). In other words, Congress knew how to incorporate a good-faith exception and it even did so as a defense to civil or criminal cases alleging violations of Title III. But it declined to incorporate good faith as a reason to mitigate the effects of Title III's suppression provision.

*Third*, the legislative history of the statute counsels against incorporating a good-faith exception.  Congress passed Title III in 1968 and the Supreme Court decided *Leon* in 1984.  "Congress obviously could not know that Fourth Amendment search and seizure law would embrace a good-faith exception sixteen years after the passage of Title III, and the language from the Senate Report indicates a desire to incorporate only the search and seizure law that was in place at the time of the passage of Title III."  *Rice*, 478 F.3d at 713 (citing S. Rep. No. 90-1097 (1968) (indicating intent not to "press the scope of the suppression role beyond present search and seizure law")).

*Fourth*, even if the good-faith exception applied to Title III, Kansas law would prevent the Court from applying it.  The wiretaps in this case were issued under Kansas' wiretap statute, not Title III.  As our Circuit has recognized, a state may elect to impose greater protections than does Title III.  *McNulty*, 729 F.2d at 1264.  When a state choses to adopt more protection than Title III, a federal court must honor those additional strictures.  *Id.* (citing *United States v. Marion*, 535 F.2d 697, 702 (2d Cir. 1976)).  In the lone case addressing whether the good-faith exception applies to the suppression remedy contained in Kansas' wiretap statute, the Kansas Supreme Court suggested, though it did not hold, that the good-faith exception does not apply to the Kansas act.  *See State v. Bruce*, 287 P.3d 919, 926 (2012) (citing *Rice* with approval and noting that the suppression rule for wiretaps derives from statutory provisions, not the judicially created exclusionary rule that applies to Fourth Amendment violations).  Thus, to resolve defendants' motions, the Court must determine whether the reconstituted wiretap and search warrant affidavits satisfy probable cause and other applicable statutory requirements.

## II.    Defendants' Motions to Suppress

With this framework in mind, the Court turns to the remaining motions to suppress still pending in this case.

### A.    Anthony Thompson's Motions to Suppress (Docs. 357, 590)

On March 14, 2013, investigators obtained an order authorizing interception of phone calls on a wireless phone number used by Mr. Thompson ending in 1783, Doc. 379-1, and obtained an extension of that order on April 4, 2013.  Doc. 379-7.  The content of certain calls and text message intercepted under these orders and other orders targeting codefendants led investigators to believe that Mr. Thompson had changed phones to evade monitoring by law enforcement.  *See* Doc. 379-16.  On April 16, 2013, investigators obtained a wiretap order on Mr. Thompson's new number, ending in 2893.  The 2893 application relied in part on intercepted communications that did not survive the Court's suppression order.  Mr. Thompson has filed a motion arguing that, when one excludes the suppressed communications, the affidavit supporting the 2893 application fails to establish probable cause for a wiretap on the 2893 line.  Doc. 590 at 13-16.  Because the 2893 order was invalid, Mr. Thompson asserts, the Court must exclude calls intercepted under this order from its review of the search warrant affidavit, leaving the warrant application without information sufficient to establish probable cause.  *Id.* at 2 (also applying Doc. 357's original arguments about the search warrant to the reconstituted affidavit).  Ms. Foy, Ms. Johnson, and Mr. Ponds each have joined Mr. Thompson's motions (Docs. 592, 594, 595).

The Court first addresses Mr. Thompson's challenge to the affidavit supporting the application for the 2893 wiretap.  The parties do not dispute which information the Court's order suppressed—they agree that the Court should not consider ¶¶ 5, 6, 7, and 9.  Doc. 379-16.

Without these paragraphs, Mr. Thompson argues, the affidavit fails to (1) establish that he was using this phone line, and (2) otherwise establish probable cause to monitor the line.

Mr. Thompson's first argument, even if correct, is insignificant to the probable cause determination. It turns out that the relevant probable cause inquiry is not whether the affidavit establishes that a suspect uses the particular targeted phone but, instead, "whether the conversations sought to be monitored [are] likely to contain evidence of a crime." *United States v. Ambrosio*, 898 F. Supp. 177, 184 (S.D.N.Y. 1995); *see also United States v. Domme*, 753 F.2d 950, 954 n.2 (11th Cir. 1985) (concluding, in the wiretap context, that the standard requires "probable cause to believe that the telephone in question is being used in an illegal operation"), *holding modified on other grounds by United States v. Dennis*, 786 F.2d 1029 (11th Cir. 1986); *United States v. Degaule*, 797 F. Supp. 2d 1332, 1355 (N.D. Ga. 2011) (holding that "the relevant probable cause inquiry is not whether [this particular suspect] was engaged in criminal activity but whether *an individual* was engaged in criminal activity and whether the conversations sought to be monitored over the target telephones were likely to contain evidence of a crime" (internal quotation omitted)). Under these criteria, the reconstituted affidavit contains sufficient probable cause to support the issuance of a wiretap order on the 2893 line.

The remaining paragraphs established that: a drug trafficking conspiracy was ongoing and unabated (described in detail in previous documentation submitted to Judge Platt and incorporated properly into the 2893 affidavit, *see* ¶ 3); the conspiracy's participants included, among others, Albert Banks, Anthony Thompson, Otis Ponds, and Johnny Ivory; other members of the conspiracy recently had changed their phones, indicating that they suspected law enforcement was monitoring their calls, *see* ¶ 4; Mr. Thompson likely shared their concern, *see* ¶ 8; and, most notably, on April 15, 2013, Mr. Thompson had called Albert Banks—another

suspected member of the targeted conspiracy—from the 2893 number and discussed a drug transaction involving Johnny Ivory, *see* ¶ 10. This call was intercepted under the wiretap order targeting Mr. Banks' phone. *See* Govt's Hearing Ex. 6, Call No. 358. Thus, even without the suppressed calls and texts, the reconstituted affidavit provides facts linking the 2893 number to Anthony Thompson, linking the 2893 number to the suspected conspiracy, and establishing probable cause that conversations on the 2893 line likely will contain evidence of drug trafficking crimes. The Court thus declines to suppress calls intercepted under the 2893 order on the basis that the reconstituted affidavit failed to establish probable cause to intercept calls placed and received on that line.

Because the 2893 order adequately demonstrated probable cause, the Court next will consider Mr. Thompson's challenges to the validity of the search warrant excluding only those calls suppressed under the Court's original suppression order. Mr. Thompson seeks to invalidate the search warrant on the grounds that: (1) the affidavit failed to establish probable cause that was particular to Mr. Thompson; (2) the affidavit failed to establish a nexus between Mr. Thompson's residence and suspected illegal activity; (3) the information about Mr. Ward was stale; and (4) Judge Platt abandoned his role as a neutral and detached magistrate.

After reconstituting the affidavit to include only evidence that survives the suppression order, the Court concludes that it still contains ample probable cause that Mr. Thompson was engaged in drug trafficking. Paragraphs 1037, 1053, and 1150 describe the contents of phone calls where Mr. Thompson discussed possessing, using, and trafficking drugs. In each paragraph, Detective Babcock explained, based on his education and training, why he believed that the conversations were consistent with drug trafficking. The calls occurred on April 19 and 25, 2013. Although these three paragraphs alone suffice to establish probable cause that Mr.

Thompson was committing drug trafficking crimes, the affidavit contains *hundreds* more paragraphs documenting similar conduct.  The probable cause it establishes both is substantial and particular to Mr. Thompson.

Mr. Thompson's claims that the affidavit contained only stale information about him and that it failed to establish a nexus between his residence and his suspected crimes also fail to persuade the Court.  The affidavit describes admissible phone calls during which Mr. Thompson discussed drug sales as late as April 30—nine days before officers executed the warrant at his residence.  The affidavit also describes an ongoing and unabated drug trafficking conspiracy, Doc. 395-1 at 219, and specific instances of Mr. Thompson's involvement in the conspiracy over the past seven months.  "When the circumstances suggest ongoing criminal activity, the passage of time recedes in importance."  *United States v. Cantu*, 405 F.3d 1173, 1177 (10th Cir. 2005) (citing *United States v. Jardine*, 364 F.3d 1200, 1205 (10th Cir. 2004), *cert. granted*, *judgment vacated on other grounds*, 543 U.S. 1102 (2005)).  Here, the affidavit contains evidence of conduct occurring close to the date when officers executed the warrant and established an ongoing pattern of drug trafficking activity.  The Court thus rejects Mr. Thompson's argument that the affidavit's information about him was too stale to support probable cause.

The Court also rejects Mr. Thompson's argument that the affidavit failed to establish a sufficient nexus between his suspected crimes and his residence.  He faults Detective Babcock's "generic" statement that evidence of drug trafficking often can be found at a suspect's residence, *see* Doc. 357 at 10, but this inference plainly complies with Tenth Circuit law.  *United States v. Sanchez*, 555 F.3d 910, 914 (10th Cir. 2009) (observing that "it is merely common sense that a drug supplier will keep evidence of his crimes at his home")).  Alternatively, Judge Platt was entitled to rely on Detective Babcock's opinion that drug traffickers often maintain evidence of

their crimes at their homes. *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997) (holding that a magistrate may "rely on the opinion of police [about] where contraband may be kept"). The affidavit satisfies the nexus requirement under either standard.

Finally, Mr. Thompson has failed to support his assertion that Judge Platt abandoned his "neutral and detached" role. Mr. Thompson has not presented any evidence that Judge Platt was overwhelmed or otherwise failed to consider the affidavit carefully to determine whether individualized probable cause supported issuance of a search warrant for each residence identified in the affidavit.[2] Instead, Mr. Thompson simply asserts that the size of the affidavit alone is a sufficient reason to invalidate the warrant. The Court disagrees. Five days elapsed between Judge Platt receiving the application and when he issued the warrant, ample time for him to review the information it presented carefully. Also, the Court has considered and rejected Mr. Thompson's specific challenges to the validity of the warrant. In the absence of any evidence suggesting that Judge Platt abandoned his neutral and detached role, the Court declines to invalidate the warrant based on mere speculation. *See United States v. Wilson*, 899 F. Supp. 521, 528 (D. Kan. 1995) (holding that in the absence of any evidence that the issuing judge abandoned his neutral and detached role, "[the defendant's] allegations are nothing more than unsubstantiated surmise") *aff'd*, 96 F.3d 1454 (10th Cir. 1996).

### B. Johnny Ivory's Motions to Suppress (Docs. 338, 585)

In April 15, 2013, Judge Platt granted an application for a search warrant authorizing a search of 3139 SE Michigan Avenue in Topeka, Kansas, a residence belonging to the mother of defendant Johnny Ivory. While executing the warrant, officers seized crack cocaine, drug

---

[2] In his first motion, Mr. Thompson purports to "reserve the right to present further evidence of Judge Platt's failure to [act] neutral and detached." Doc. 338 at 13. Specifically, he asserts that Judge Platt denied him access to counsel on two occasions. Mr. Thompson, however, did not present any evidence about this issue, leaving the Court only with his arguments based on the size of the affidavit.

paraphernalia, and ammunition.  Mr. Ivory has filed two motions to suppress (Docs. 338, 585).

In these motions, he argues that the warrant was invalid because the supporting affidavit failed to

establish probable cause to search the residence.  His second motion reiterates the same

arguments, claiming that they apply with greater force once the Court removes the suppressed

phone calls from the affidavit.

The principal argument Mr. Ivory advances in both motions asserts that the affidavit

failed to link any criminal activity to the 3139 Michigan residence.  The Court disagrees.  The

reconstituted affidavit describes Mr. Ivory's relationship with Albert Banks and other members

of the suspected conspiracy.  Doc. 585 at 22-25.  It also describes his history of drug trafficking,

including an officer's seizure of a half-pound of marijuana, two handguns and nearly $10,000 in

United States currency,  *id.* at 22, 26, and a drug transaction between Mr. Ivory and an individual

named Padarthi Satish that officers observed while conducting physical surveillance.  *Id.* at 26.

Mr. Satish met Mr. Ivory at the 3139 Michigan residence only ten days before the warrant

issued.  *Id.*  Mr. Ivory briefly entered Mr. Satish's vehicle before returning to his residence, and

officers conducted a traffic stop on Mr. Satish's vehicle after he departed the residence.  *Id.*

They found marijuana and drug paraphernalia in Mr. Satish's vehicle.  *Id.*

The Court finds that the description of these events in the affidavit established a

substantial basis to believe Mr. Ivory used the 3139 Michigan residence to conduct a drug sale

just ten days before the warrant issued.  Courts have held that one observed drug transaction is

sufficient to establish probable cause to search the place where it occurred.  *See United States v.*

*Archibald*, 685 F.3d 553, 558 (6th Cir. 2012) (finding a single controlled purchase sufficient to

establish probable cause to search the premises where the purchase occurred).  Also, our Circuit

has found probable cause based on a single observed drug transaction, the suspect's criminal

history, and surveillance of the suspect's residence that revealed persons arriving just for short periods of time. *United States v. Liapis*, 216 F. App'x 776, 780 (10th Cir. 2007). Although the affidavit contains fewer supporting facts after one excludes the suppressed phone calls, it still provided Judge Platt with a substantial basis to find probable cause to issue a search warrant for the 3139 Michigan residence. The Court thus denies Mr. Ivory's motion to suppress.

### C.    Albert Banks' Motions to Suppress (Docs. 344, 586)

Defendant Albert Banks was the target of a search warrant and a subsequent wiretap order, both of which relied, in part, on suppressed phone calls to establish probable cause. Like Mr. Thompson, he asserts that the Court must invalidate the warrant and the wiretap order as a consequence of the Court's order suppressing certain phone calls. Mr. Ponds has joined Mr. Banks' motions (Doc. 595).

Mr. Banks first argues that the Court only can speculate about whether Judge Platt would have issued subsequent wiretap orders or a search warrant for Mr. Banks' residence if the supporting affidavits had not included the now-suppressed phone calls. He also asserts that the entire investigation of Mr. Banks is "fruit of the poisonous tree," and so the Court must suppress all evidence officers obtained after intercepting certain calls improperly. The Court rejects both of these arguments for the reasons discussed in Part I(b) of this Order.

The Tenth Circuit has explained the analysis a court should conduct when resolving motions seeking to suppress derivative evidence. The Court should invalidate the subsequent search warrant or wiretap order only "if [the suppressed] information was critical to establishing probable cause." *Sims*, 428 F.3d at 954. "If, however, the affidavit contained sufficient accurate or untainted evidence, the warrant is nevertheless valid." *Id.* (internal quotation omitted). Rather than suppressing all evidence seized after the wiretap violation, as Mr. Banks urges, the Court

will review the affidavit supporting the search warrant and the second wiretap order to determine if they still support a probable cause finding.

The Court first addresses the affidavit in support of a wiretap on Mr. Banks' number ending in 9771 (Doc. 379-26). While Mr. Banks does not identify specifically the information he seeks to exclude, the government concedes that ¶¶ 5, 7, 9, 10, 11, 12 are inadmissible and the Court should not consider them when determining whether the reconstituted affidavit establishes probable cause. Doc. 597 at 17.

The remaining paragraphs in the affidavit contain the following information: a description of an ongoing and unabated drug trafficking conspiracy, Doc. 379-26 at ¶ 2; a conversation with Anthony Thompson about getting some "change" and whether "Whack" (Otis Ponds) was around, *id.* at ¶ 13; and another conversation with Anthony Thompson about their drug supplier's week-long absence, *id.* at ¶ 14. The remaining information was sufficient to establish that Albert Banks used 9771 line to communicate with other suspected members of the drug trafficking conspiracy, and that he used it to communicate about drug-related activities. The Court thus concludes that the reconstituted affidavit still established a substantial basis to believe that conversations on the 9771 line likely would contain evidence of crimes. *See Ambrosio*, 898 F. Supp. at 184; *Domme*, 753 F.2d at 954; *Degaule*, 797 F. Supp. 2d at 1355. The Court thus denies Mr. Banks' motion to suppress communications intercepted under this order.

The Court next turns to the affidavit supporting the search warrant of Mr. Banks' residence at 235 E. Third Street in Junction City, Kansas (Doc. 395-1). Mr. Banks asserts two arguments challenging its validity. First, he argues that the affidavit failed to establish probable cause that contraband was located at the Third Street residence. Second, like Mr. Thompson, he

argues that the supporting affidavit was too voluminous to permit Judge Platt to reach a neutral and detached decision whether to issue the warrant.

Specifically, Mr. Banks claims that the affidavit "wholly fail[ed] to advise the judge how [officers] [knew] that an individual resides at a specific location and, even if the individual did reside at the location, how the Affiant [knew] or believed that drugs [were] secreted there." Doc. 345 at 5. After removing the suppressed phone calls from the affidavit, just a small sample of the remaining paragraphs establishes the following: Mr. Banks participated in several controlled sales of methamphetamine to a KBI informant, Doc. 395-1 at 4; Mr. Banks discussed selling crack to Charles Foster over the phone, *id.* at ¶ 415; Mr. Thompson informed a buyer that he did not have any powder cocaine but indicated that Mr. Banks likely could sell her some, adding that Mr. Banks usually had "fire" (meaning high quality) powder cocaine, *id.* at ¶ 827; Mr. Banks called an individual named Charles Woods (whom agents knew to be a drug dealer) and arranged a meeting to pick up a "bag" of drugs, *id.* at ¶ 906; and Mr. Banks again called Mr. Foster that same day to discuss picking up drugs, *id.* at ¶¶ 908, 910. Aside from these specific examples, the affidavit includes hundreds of additional paragraphs describing more evidence suggesting that Mr. Banks was distributing drugs.

It also contains evidence specifically linking Mr. Banks' suspected drug activity to the Third Street residence. *See, e.g.*, *id.* ¶ 446 (describing officer's observation of Otis Ponds' vehicle parking at Mr. Banks' residence and departing shortly thereafter); *id.* at 486 (describing conversation where Mr. Banks arranges drug sale with Lamont Ward and an officer conducting physical surveillance observes Mr. Ward arriving at Banks' Third Street residence shortly after this call). Even without this information, Judge Platt could have simply inferred that drug traffickers often keep evidence of their crimes at their home. *Sanchez*, 555 F.3d at 914; *Hargus*,

128 F.3d at 1362.  With this information, the affidavit establishes both circumstantial and direct evidence upon which Judge Platt could find a nexus between Mr. Banks' suspected crimes and the residence targeted by the warrant.  The Court thus is unpersuaded by Mr. Banks' argument that the affidavit failed to establish particularized probable cause to search the Third Street residence.

Mr. Banks also argues that the supporting affidavit was too voluminous to permit a neutral and detached evaluation of its contents.  Like Mr. Thompson, Mr. Banks has failed to identify any evidence—aside from the affidavit's size—to support this argument.  The Court denies Mr. Banks' motion the same reasons.  *See supra*, Part II(B).

### D.    Otis Ponds' Motion to Suppress (Doc. 384)

Mr. Ponds' motion seeks specific relief and asserts general arguments about the law governing admissibility of wiretap evidence.  The government does not contest the aspect of his motion seeking to suppress a package containing drugs that officers seized after learning about it from an improperly intercepted phone call, so the Court already has granted that aspect of the motion (Doc. 622).  His remaining arguments assert:  (1) the Court must suppress a call if the phone leaves the Eighth Judicial District during the call; (2) the Court must suppress a call if the call begins outside the Eighth Judicial District and enters the Eighth Judicial District during the call; (3) the government may not introduce the content of an intercepted call to establish the location of a phone; and (4) all of Mr. Ponds' intercepted calls must be suppressed because a law enforcement agent testified about the contents of some calls at a suppression hearing.

Mr. Ponds' arguments about calls leaving or entering the Eighth Judicial District during the duration of a single call raises an interesting legal question.  Mr. Ponds, however, has not identified any phone calls that present either issue, so the Court has no basis to decide them here.

18

Next, Mr. Ponds argues that the government may not use the content of an intercepted call to establish a phone's location. His argument relies on the text of K.S.A. § 22-2517 and 18 U.S.C. § 2515, which provide "[w]henever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, *hearing*, or other proceeding" (emphasis added). If Mr. Ponds is correct, then the Court may not consider the content of intercepted communications even for the limited purpose of determining whether they, in fact, were intercepted improperly. Mr. Ponds position, however, is inconsistent with § 2518(10)(a) of Title III and § 22-2516(9)(a) of the Kansas statue, which establishes the procedure through which an aggrieved party may seek to suppress wiretap evidence. These sections provide: "If the motion [to suppress] is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter." 18 U.S.C. § 2518(10)(a). In sum, the statute prohibits disclosure of wiretap contents only once a court grants a motion to suppress. This provision suggests that the statute permits disclosure of intercepted communications for purposes of resolving a motion to suppress, because such analysis necessarily must occur before the Court can grant or deny the motion.

Mr. Ponds' final argument asserts that all wiretap evidence must be suppressed because the agent Chris Turner testified about the contents of certain calls at the suppression hearing. The Court disagrees. First, for the reasons just discussed, the Court concludes that it was appropriate for Agent Turner to discuss the contents of intercepted communications for the limited purpose of resolving defendants' motions to suppress. Second, even if it was improper for Agent Turner to testify about these communications, Mr. Ponds cites no authority for the sweeping remedy he requests. He fails to explain how improper disclosure of a few calls would

require the Court to suppress *all* wiretap evidence. Accordingly, the Court denies the remaining parts of Mr. Ponds' motion to suppress (Doc. 584).

### E.  Patricia Foy's Motion to Suppress (Doc. 591)

Patricia Foy's motion argues that the calls intercepted under the wiretap order on Anthony Thompson's 2893 line must be suppressed (Doc. 591). Mr. Taylor and Mr. Ivory have joined this motion (Doc. 593, 596). Ms. Foy argues that the order is facially invalid because it failed to comply with the requirements of K.S.A. § 22-2516(1), subsections (b), (c), and (e).

Subsection (b) requires that an affidavit supporting an application for a wiretap order include:

> a full and complete statement of the facts and circumstances relied upon by the applicant to justify such applicant's belief that an order should be issued, including (i) details as to the particular offense that has been, is being or is about to be committed, (ii) except as provided in subsection (10), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, and (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

K.S.A. § 22-2516(1)(b); *see also* 18 U.S.C. § 2518(1)(b) (stating the identical federal requirement). Aside from listing Subsection (b) as one of the sections she claims the affidavit violated, Ms. Foy never develops her claim that the 2893 affidavit failed to comply with this provision. After reviewing the affidavit, the Court finds that Mr. Foy's argument is without merit. The affidavit identifies the particular offense that the officers believed the target had committed (drug trafficking, *see ¶* 11); specified the communication facilities that the order seeks to target by identifying a service provider, an IMSI number, and a phone number, *see ¶* 2; *United States v. Goodwin*, 141 F.3d 394, 403 (2d Cir. 1997) (finding specification requirement met when applications identified electronic serial numbers and telephone numbers of target phones), described the type of communications that officers sought to intercept (communications

with other members of the suspected conspiracy about distributing drugs, *see id.*); and it identified Anthony Thompson as the individual whose communications the order targeted for interception, *see* ¶¶ 2, 3, and 11.  The Court thus concludes that the affidavit satisfied Subsection (b).

Subsection (c), often called the "necessity requirement," requires that an affidavit include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  *See also* 18 U.S.C. § 2518(1)(c) (stating the identical federal requirement).  The Court already has considered a similar challenge to wiretap orders based on their failure to provide a statement of necessity.  *See* Doc. 490.  When it ruled those motions, the Court concluded that the wiretap orders at issue satisfied the necessity requirement because they incorporated the necessity statement from previous orders by reference.  Following *United States v. Dennis*, the Court reasoned, "incorporating an earlier showing by reference was an appropriate method to demonstrate necessity so long as the incorporated information sufficiently demonstrated necessity for the new wiretap application."  *Id.* (quoting 786 F.2d at 1037).  For the reasons it explained in Doc. 490, the Court rejects Ms. Foy's argument that the affidavit failed to demonstrate necessity.

The rationale for the Court's conclusion about the necessity requirement applies with equal force to Ms. Foy's arguments that the affidavit failed to comply with Subsection (e).  This section requires that an affidavit supporting a wiretap application include:

> a full and complete statement of the facts known to the applicant concerning all previous applications made to any judge for authorization to intercept wire, oral or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application[.]

K.S.A. § 22-2516(1)(b); *see also* 18 U.S.C. § 2518(1)(e) (stating the identical federal requirement). Ms. Foy is correct that the affidavit, within its four corners, did not describe facts about the previous wiretap application targeting Mr. Thompson. It did however, purport to incorporate by reference "all information related herein to this investigation, and all previous information submitted in prior affidavits and progress reports . . . related to Albert Banks, Anthony Thompson, Otis Ponds, Johnny Lee Ivory and others . . . ." Doc. 591-1 at ¶ 3. The Court must determine whether such a broad incorporation by reference is sufficient to satisfy the requirements of Subsection (e).

Ms. Foy argues that the statement of incorporation is too general to satisfy Subsection (e), although she cites no authority for this proposition. The Court agrees that a blanket statement purporting to incorporate all information in previously submitted documents might, in some cases, fail to satisfy Subsection (e) because it would not adequately inform the issuing judge about the existence and status of previous applications. But here, Judge Platt was the same judge who over the past month had considered and approved each of the previous seven applications for wiretaps submitted in this investigation. He also had received and reviewed the periodic progress reports that investigators submitted every seven to ten days. Because he had reviewed and ruled the other applications that the 2893 affidavit incorporated by reference, Judge Platt knew precisely what applications investigators had submitted and what action the issuing judge had taken on those applications. As *Dennis* instructs, it is appropriate for an application to incorporate information by reference so long as the incorporated information satisfies the requirement of the statute. 786 F.2d at 1037. The incorporation used here complied with that standard, and Judge Platt—based on his prior involvement with the investigation—was in a position verify that it did.

22

For this same reason, the Court is unpersuaded by Ms. Foy's assertion that the application was invalid because investigators did not attach the incorporated documents to it. Judge Platt had personally reviewed the incorporated information, so physically attaching it was not necessary. The Tenth Circuit applied similar logic in *United States v. Castillo-Garcia*, a case relied upon by Ms. Foy. 117 F.3d at 1193 n.11. In that case, investigators failed to attach a copy of materials a wiretap application incorporated by reference. *Id.* They did, however, include the incorporated materials in a separate wiretap application that the issuing judge had ruled the same day. *Id.* The Circuit reasoned that this clerical error should not invalidate the wiretap because the judge was able to consider the incorporated material by looking at the documents in the separate application. Similarly, here, Judge Platt could consider the incorporated materials because he had received those precise documents in the preceding weeks. Accordingly, the Court concludes that the affidavit also complied with Subsection (e) and denies Ms. Foy's motion to suppress.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Anthony Thompson's motions to suppress evidence obtained from search of residence and subsequent wiretap order (Docs. 357, 590) are denied, Johnny Ivory's first and second motions to suppress (Docs. 338, 585) are denied, Albert Banks' motions to suppress evidence derived from defective search warrant and subsequent wiretap order (Docs. 344, 586) are denied, the remaining parts of Otis Ponds' motion to suppress extraterritorial calls, derivative evidence, and improper disclosure of call contents (Doc. 584) are denied, and Patricia Foy's motion to suppress (Doc. 591) is denied. The codefendants' motions joining or adopting the arguments asserted in these motions also are denied (Doc. 592, 593, 594, 595, 596).

**IT IS SO ORDERED.**

Dated this 15th day of May, 2015, at Topeka, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge